**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>PALMAS ATHLETIC CLUB CORP.,<br><br>     Debtor. | CASE NO. 25-03489 MAG11<br><br>Chapter 11<br><br><br>FILED & ENTERED ON 4/1/2026 |

**OPINION AND ORDER**

On August 4, 2025, Palmas Athletic Club Corp. ("Debtor") filed a petition for relief

under Chapter 11 of the Bankruptcy Code. Dkt. # 1. Debtor owns and operates golf course and

resort facilities within the Palmas del Mar development, located in Humacao, Puerto Rico.

On August 21, 2025, UBS Trust Company of Puerto Rico ("UBS") filed a secured claim

in the amount of $46,447,882.22. Claims Register # 5-1. UBS's claim is secured by a first-

priority mortgage lien recorded in the Puerto Rico Property Registry pursuant to Deed No. 35 of

Deed of Constitution of Mortgage executed on October 22, 2010. This mortgage is secured in the

principal amount of $33,371,862.87 with three properties in Humacao: property 26,118 secures

$28,448,145.40, property 26,391 secures $4,376,637.75, and property 26,472 secures

$547,079.72. Claims Register #5-1, Exhibits O,P,Q.

On September 6, 2025, Palmas del Mar Homeowners Association, Inc.'s ("HOA") filed a

secured claim in the amount of $152,230.00, which has since been reduced to $128,735.59,[1] for

annual homeowners' association assessments for the years 2024 and 2025. Claims Register # 9-

---

[1] While the HOA has not amended claim number 9, it has stated that the original amount of $152,230 has been reduced to $128,735.39 due to "services pending payment from [HOA] as per [Debtor's] statement, which [HOA] has accepted to be deducted from the claim." Dkt. # 222, n. 1.

1. The HOA attached the following documents to the proof of claim as the basis for its secured status: (i) Amended and Restated Certificate of Incorporation for Palmas del Mar Homeowners Association, Inc. dated October 4, 2012 (ii) Palmas del Mar Homeowners Association, Inc. By-Laws, as amended on December 4, 2019, and (iii) Deed of Amended and Restated Declaration of Rights, Restrictions, Conditions and Constitution of Restrictive Covenants and Establishment of Provisions for Palmas del Mar Homeowners Association, Deed No. 1, as amended December 4, 2019 and recorded on July 26, 2020 (the "2019 Deed of Restrictive Covenants").

On September 15, 2025, Debtor filed its objection to the HOA's claim number 9. Dkt. # 56. Debtor's argument is twofold. First, Debtor argues that the HOA's claim is not secured because the covenants and bylaws do not grant it a secured status. Secondly, Debtor argues that it does not owe money to the HOA due to a Memorandum of Understanding (the "MOU") between the parties, in which they agreed to provide each other services and considerations resulting in an offset of any homeowner's associations dues that could be owed by Debtor. Under Debtor's financial analysis of payments made under the MOU, the HOA owes Debtor $446,365.45. The MOU and the financial analysis of payments per the MOU were filed as exhibits A and B to Debtor's objection. Dkt. # 56, pp. 5-13.

On October 8, 2025, the HOA opposed Debtor's objection to its claim. Dkt. # 82. The HOA asserts that the MOU was terminated in 2024 and, as a result, the Debtor remains liable for assessment fees for 2024 and 2025. The HOA further contends that under its financial analysis of the MOU, Debtor's liability ranges from $102,393.30, under the most favorable scenario to the Debtor, to $326,184.20. The HOA's payment analyses supporting these figures were filed as exhibits 1 and 2 to the HOA's opposition. Dkt. # 82, pp. 7-11.

As to the security of its claim, the HOA asserts that Article V, Section A (1) of the Deed of Restrictive Covenants provides for the annual assessments and other charges to constitute a continuing lien on the real property. It further points out that the bylaws of the corporation affirmed this security status. It thus argues that the covenants and bylaws of the HOA, as to which Debtor is a member, bind the Debtor, creating a secured claim over the Debtor's real estate.

On November 21, 2025, Debtor replied to the HOA's opposition. Dkt. # 136. Debtor's reply focused on the allegations regarding the payment and considerations contemplated under the MOU and the alleged setoff of their mutual obligations. As to the secured status of HOA's claim, Debtor pointed out that assuming, *in arguendo,* that HOA's assessments are secured with a lien on Debtor's real property, this obligation would be subordinate to the mortgage liens held by UBS on Debtor's realty in excess of $40,000,000, and the property's estimated appraised value is $9,100,000.

On January 22, 2026, Debtor filed a supplemental motion regarding its objection to the HOA's claim. Dkt. # 194. In this motion, Debtor cites to In re ESJ Towers, Inc., 2023 Bankr. LEXIS 1977 (Bankr. D.P.R. Aug. 9, 2023), In re Padilla Ibañez, 2022 Bankr. LEXIS 212 (Bankr. D.P.R. Jan. 27, 2022), and Vázquez Morales v. Caguas Federal Savings & Loan Association of P.R., 118 P.R. Dec. 806 (1987) to underscore the principle that there cannot be secret liens under Puerto Rico law. Debtor asserts that for a lien to exist in Puerto Rico, it must be properly recorded with the Registry of the Property, which is not the situation here.

On February 5, 2026, this court held a hearing on Debtor's objection to the HOA's claim and the approval of Debtor's disclosure statement. At the hearing, the court heard arguments

3

regarding whether the HOA holds a secured claim. In its pertinent part, the minutes of the

hearing reflect the following:

> The Debtor argued that the claim filed by Palmas de Mar Homeowners Association ("HOA") in the amount of $152,230 (Proof of Claim No. 9) is not secured. The Debtor asserted that an appraisal of its real property reflects that its value is $9,100,000 and that the lien held by UBS in excess of $40 million fully encumbers the property, thereby rendering the HOA's claim unsecured, even if otherwise valid as a lien.

> The HOA responded that it does not dispute the value of the Debtor's real property, nor that the value of the property is less than the total amount of liens encumbering it. The HOA further stated that the amount of UBS's claim is not in dispute. However, the HOA contended that its lien has priority over the UBS lien because it pre-dates the UBS lien, as reflected in the documents attached to its proof of claim, including the original deed of constitution recorded prior to the UBS lien. The HOA argued that, pursuant to these documents, all homeowners association assessments are secured.

> The Debtor responded that UBS's lien primes any other purported liens and that there is no equity available to support any additional liens. The Debtor further argued that the Property Registry certifications (there are three lots of land), which are self-authenticated documents pursuant to the Rules of Evidence, establish that the HOA has not recorded any liens against the Debtor's real property. The Debtor presented the Property Registry certifications at the hearing, which were collectively admitted into evidence as **Exhibit 1**.

> Finally, the Debtor argued that no "secret liens" exist under Puerto Rico law. The Debtor explained that, while master deeds recorded pursuant to Puerto Rico condominium law typically contain provisions stating that unpaid maintenance fees may give rise to a lien, such language does not create a lien *ipso facto*. Rather, for any such lien to be effective, a judgment must be recorded in the Property Registry to perfect and create the lien. Here, as reflected in the Property Registry certifications admitted into evidence, no liens in favor of the HOA have been recorded.

> The HOA acknowledged that the Property Registry certifications presented by the Debtor reflect that no lien in favor of the HOA is recorded against the Debtor's real property. However, the HOA argued that the documents submitted in support of its proof of claim created a lien securing the payment of the homeowners' association fees. The HOA further referenced the "Maintenance, Improvements, and Insurance" provision contained in the Property Registry certifications submitted by the Debtor and admitted into evidence as **Exhibit 1 (Property No. 26118, at page 4).** The court noted that the ranking of the liens, including whether the HOA's asserted lien has priority over the UBS lien, presents a legal question. The court

4

further observed that, if it ultimately determines that the HOA's claim is unsecured, further litigation of the factual issues concerning the provisions and/or termination of the Memorandum of Understanding ("MOU") between the Debtor and the HOA may not be judicious.
The HOA stated that it will supplement its position and brief the court as to the alleged priority of its secured lien.

Dkt. # 213.

On February 23, 2026, the HOA filed its supplemental brief. Dkt. # 222. Therein, the HOA contends that Debtor's secured obligations arise from the original Deed of Declaration of Rights, Restrictions, Conditions, and Constitution of Restrictive Covenants and Establishment of Provisions for The Palmas De Mar Homeowners Association Incorporated, Deed No. 13, executed before Notary Public Guillermo A. Nigaglioni on September 14, 1972 (the "1972 Deed of Restrictive Covenants"). The 1972 Deed of Restrictive Covenants was filed as Exhibit 2 to Dkt. # 222, 21-70.

The HOA explains that the 1972 Deed of Restrictive Covenants was subsequently amended in 1973, 1976, 1985, and 1997, and that the obligations contained therein have been consistently affirmed by Debtor and recorded in the Property Registry. The HOA emphasizes that, for purposes of lien priority, the most relevant instrument is the latest registered deed predating other existing liens, namely Deed No. 2, titled Deed Amended and Restated Declaration of Rights, Restrictions, Conditions and Constitution of Restrictive Covenants and Establishment of Provisions for The Palmas De Mar Homeowners Association Incorporated, dated August 27, 1997 (the "1997 Deed of Restrictive Covenants"). The 1997 Deed of Restrictive Covenants was filed as Exhibit 3 to Dkt. # 222, pp 71-121.

The HOA further points to Covenant V, Section A ("Covenants for Maintenance Assessments") of the 1997 Deed of Restrictive Covenants, which provides that annual and special assessments shall constitute a charge and continuing lien upon the real property and the

5

improvements thereon against which such assessments are made. Dkt. # 222, Exhibit 3 at pp. 22–23. In addition, Section I of the same deed provides that the nonpayment of such assessments results in a charge and continuing lien upon the land, all improvements thereon, and against the owner. Id. at pp. 26–27. The HOA also points out that the Property Registry certifications admitted into evidence at the February 5, 2026 hearing reflect that unit owners are required to pay assessments established by the HOA pursuant to the covenants to cover maintenance and improvements, including, but not limited to, signage, landscaping, lighting, and insurance. Dkt. 213-1, p. 4.

Thus, the HOA argues that it is an undisputed matter of public record that its annual assessments constitute a charge and continuing lien on Debtor's property, and thus are not "silent liens," but rather perfected encumbrances of a secured nature. Accordingly, the HOA maintains that the assessments for tax years 2024 and 2025 are secured claims.

Finally, the HOA asserts that the deeds establishing liens in its favor to secure the payment of annual assessments were duly recorded and made effective against third parties well before the liens granted in favor of UBS in 2010 and therefore enjoy priority over such subsequent encumbrances.

On February 27, 2026, Debtor filed a response to the HOA's brief. Dkt. # 223. Debtor contends that the HOA's is arguing that the Deed of Restrictive Covenants created an underlying lien which is hidden or subjacent and therefore silent, which cannot exist under Puerto Rico Property Law as a lien, regardless of Debtor's agreements and obligations as a member of the HOA under the covenants pursuant to the aforesaid deeds or otherwise. Debtor again cites to In re ESJ Towers, Inc., In re Padilla Ibañez, and Vázquez Morales in support of the proposition that

6

there is no recorded lien in its realty in favor of HOA, and that all there may be, if anything, is notice that a lien could be created in favor thereof on account of non-paid assessments by HOA.

On March 4, 2026, UBS filed its brief in response. Dkt. # 224. UBS argues that the caselaw cited by Debtor is squarely applicable here. According to UBS, the fundamental holding in In re ESJ Towers, Inc. and In re Padilla Ibañez is that a claim for common expenses or assessments is not secured unless and until a specific lien for the claimed amount is recorded in the Property Registry. UBS points out that the mere fact that the HOA's covenants are recorded does not transform an unrecorded assessment claim into a perfected lien. UBS contends that while the covenants may establish an obligation to pay assessments; they do not, by themselves, perfect a lien for any specific amount.

On March 13, 2026, after requesting an extension to do so, the HOA responded to the briefs by Debtor and UBS. Dkt. # 234. The HOA asserts that its secured claim is not based on a silent lien, but a public lien created under the Deed of Restrictive Covenants, and not the Puerto Rico Horizontal Property Law.

For the reasons stated below, Debtor's objection to claim number 9 is sustained and the HOA's claim is allowed as a general unsecured claim.[2]

The HOA asserts that its claim for unpaid annual property assessments totaling $128,735.59 is secured and enjoys priority over any subsequent mortgage liens. According to the HOA, its lien arises from the 1972 Deed of Restrictive Covenants, as amended by the 1997 Deed of Restrictive Covenants, and further amended by the 2019 Deed of Restrictive Covenants, which was duly recorded in the Property Registry prior to the recordation of UBS's mortgage

---

[2] The scope of this opinion and order is limited to determining the nature of the HOA's claim. The factual issues concerning the alleged setoff of payments under the MOU have been scheduled for an evidentiary hearing on April 21, 2026. See, Dkt. # 209.

lien. Therefore, the HOA contends that UBS's secured claim in the amount of at least $9,100,000 must be reduced by $128,735.59.

Debtor and UBS challenge the HOA's claim on two independent grounds. First, they argue that the HOA failed to perfect any lien through registration in the Property Registry as required by Puerto Rico law, rendering its claim unsecured. Second, they contend that, even assuming the existence of a perfected lien, the same would be wholly unsecured under 11 U.S.C. § 506(a) as the senior mortgage lien exceeds the property's appraised value of $9,100,000.

In support of their position, Debtor and UBS rely on case law interpreting both the Puerto Rico Horizontal Property Act of 2020 and its predecessor statute from 1958, which grant condominium associations a lien for unpaid maintenance assessments. They emphasize that such statutory liens are not self-perfecting and must be recorded in the Property Registry to be effective against third parties. In re ESJ Towers, Inc., 2023 Bankr. LEXIS 1977, at *28 (quoting Hernandez v. Consejo de Titulares del Condominio Villas de Punta Guilarte (In re Hernandez), 2014 Bankr. LEXIS 3036, at *11 (Bankr. D.P.R. 2014) ("The lien contemplated by Article 41 of the Condominium Act is not self-perfecting; rather, in order to be perfected and for it to encumber the apartment, the lien must be recorded in the Registry of Property.").

The HOA, in turn, distinguishes these authorities by asserting that its lien is not statutory in nature, but rather arises from the Deeds of Restrictive Covenants, which were duly recorded and thus made effective against third parties and has been recognized by Debtor since the creation of the Palmas del Mar resort.

It is uncontested that the Deeds of Restrictive Covenants for 1972, 1999, and 2019, were executed in public deed form and duly recorded in the Property Registry. These instruments provide that all annual and special assessments "shall be a charge and continuing lien upon the

8

property" against which such assessments are imposed. The HOA relies exclusively on this language to characterize the assessments as a "continuing lien," but it does not identify any statutory basis under Puerto Rico law conferring upon such obligations the status of a real right with priority over competing liens. Accordingly, the dispositive issue is whether the language contained in the recorded covenants is sufficient to create a lien enforceable as a secured interest under Puerto Rico law.

Puerto Rico adheres to the principle of *numerus apertus* of real rights, which allows for the creation of property interests with effect against all persons, including those not specifically provided for in the Puerto Rico Civil Code. See Maeso v. The Chase Manhattan Bank, 133 P.R. Dec. 196, 203 (1993). However, that flexibility is not without limits. The creation of real rights still requires compliance with the structural principles governing property law, including specialty, determinacy, and registry publicity.  Here, the HOA has failed to explain how the Deeds of Restrictive Covenants satisfy those requirements. The mere characterization of an indeterminate obligation as a "continuing lien" in a recorded instrument, without more, is insufficient to transform a continuous obligation to pay assessment fees into a perfected security interest in real property with priority over other creditors. Accepting such a proposition would allow private parties to bypass the statutory framework that regulates the creation, perfection, and ranking of real rights in Puerto Rico.

The HOA alleges that the purported lien arising from the Deeds of Restrictive Covenants has priority over UBS's mortgage lien. That position is inconsistent with the principles of specialty and certainty articulated by the Puerto Rico Supreme Court in Teachers' Ret. Bd. of P.R. v. Registrar of Prop. of Caguas, 109 P.R. Dec. 569, 572–74 (1980). Under those principles, any lien affecting real property must be supported by a clear, definite, and precise statement of

value. A purported lien that fluctuates over time and depends on an indeterminate amount—such as the accumulation of assessment fees—does not establish a specific and ascertainable value and therefore fails to meet the requirements for recognition as a real encumbrance in the Property Registry.

The reasoning adopted in In re Padilla Ibañez and In re ESJ Towers, Inc. further confirms this conclusion. Although those cases addressed statutory liens under the Puerto Rico Horizontal Property Act, they underscore a broader principle: a claim for assessment fees is not secured unless a lien for a specific amount has been properly constituted and recorded in the Property Registry. In relying on Vázquez Morales, 118 P.R. Dec. at 811, those decisions reaffirm that the Registry system does not allow hidden or secret encumbrances. Consistent with those principles, the mere recordation of the Deed of Restrictive Covenants here does not convert an unspecified, fluctuating obligation into a perfected lien. At most, the covenants create a personal obligation to pay assessments; they do not establish a secured claim enforceable against the property with priority over duly recorded liens.

Accordingly, claim number 9 filed by the HOA is allowed as a general unsecured claim in the amount of $128,735.59.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of April, 2026.

María de los Ángeles González
United States Bankruptcy Judge