UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

IN RE:

PALMAS ATHLETIC CLUB, CORP.
DEBTOR

CASE NO. 25-03489–(MAG)

CHAPTER 11

SECOND AMENDED PLAN OF REORGANIZATION
FOR PALMAS ATHLETIC CLUB, CORP.

CHARLES A. CUPRILL P.S.C.
LAW OFFICES
356 Fortaleza Street
Second Floor
San Juan, PR 00901
Tel.: (787) 977–0515
Fax: (787) 977–0518
E–mail: ccuprill@cuprill.com

Palmas Athletic Club, Corp., Debtor and Debtor–in–possession in the above captioned case ("Debtor") hereby proposes the following Amended Plan of Reorganization (the "Amended Plan") under Section 1121 of Title 11 of the United States Code.

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION OF TERMS

For the purposes of the Amended Plan, the following terms shall have the meanings specified in this Article I. A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Amended Plan as a whole and not to any Section, subsection or clause contained in the Amended Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Amended Plan. The headings in the Amended Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"Administrative Claim" – Shall mean a Claim that is Allowed under Section 503 (b) of the Bankruptcy Code and that is entitled to priority under Section 507 (a) (1) of the Bankruptcy Code, including, without limitation:

(a)    fees and expenses of Professionals Allowed pursuant to a Final Order entered under Sections 330, 331, or 503 of the Bankruptcy Code, and

(b)    all fees and charges assessed against Debtor pursuant to

28 U.S.C. § 1930.

"Allowed" – Shall mean, with reference to any Claim:

(a)     a Claim that has been listed by the Debtor in its Schedules, as amended, and (i) is not listed as disputed, contingent, or unliquidated, and (ii) is not a Claim as to which proof of claim has been filed.

(b)     a Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been Allowed (whether in whole or in part) by a Final Order;

(c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and Allowed in accordance with Section 502 (h) of the Bankruptcy Code; or

(d)     any Claim expressly Allowed under the Amended Plan or pursuant to the Confirmation Order.

"Bankruptcy Case" – Shall mean Debtor's Chapter 11 case pending in the Bankruptcy Court.

"Bankruptcy Code" – Shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

"Bankruptcy Court" – Shall mean the United States Bankruptcy Court for the District of Puerto Rico where the Bankruptcy Case is pending.

"Bankruptcy Rules" – Shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

"Bar Dates" – Shall mean December 8, 2025 as the last date for the filing of proof of claims by creditors asserting Claims against the Debtor, other than governmental units, and by governmental units on February 2, 2026, as stated in the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines" dated August 6, 2025, issued by the Clerk of the Bankruptcy Court, or otherwise be forever barred from asserting a Claim against Debtor or its property and from voting on the Amended Plan and/or sharing in distributions under the Amended Plan.

"Bond Trustee" – Shall refer to UBS Trust Company of Puerto Rico, as bond trustee under the trust agreement for the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority Tourism Revenue Bonds, 2000 Series A (Palmas Del Mar Country Club Project).

"Bond Claim" – Shall refer to the allowed claim filed by the Bond Trustee, on behalf of the bondholders, against Debtor in the approximate amount of $46.4 million, as reflected in Proof of Claim No. 5-1.

"Business Day" – Shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Puerto Rico.

"Cash" – Shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, and money orders).

"Causes of Action" – Shall mean, without limitation, all of Debtor's actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims, or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise.

"Claim" – Shall mean a claim against a Person or its property as defined in Section 101 (5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment,

or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claims Objection Bar Date" – Shall mean thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of Debtor's Amended Plan.

"Claims Objection" means the objections to claims that have been or may be filed against the Holders (or purported Holders) of Claims.

"Class" – Shall mean those classes designated in Article III of the Amended Plan.

"Collateral" – Shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" – Shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in this Bankruptcy Case.

"Confirmation Order" – Shall mean the order of the Bankruptcy Court confirming the Amended Plan pursuant to the provisions of the Bankruptcy Code.

"Contingent or Unliquidated Claim" – Shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court, but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"CRIM" – Shall mean Municipal Revenues Collection Center.

"Debtor" – Shall mean Palmas Athletic Club, Inc.

"Disclosure Statement" – Shall mean the disclosure statement relating to the Amended Plan, including, without limitation, all exhibits, and schedules thereto, in

the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, the adequacy of which was approved by the Bankruptcy Court on February 5, 2026 (Docket No. 213).

"Disputed Claim" – Shall mean:

(a) if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed, or contingent; or

(b) if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

(c) a Claim which is a Contingent or Unliquidated Claim.

"Disputed Claim Amount" – Shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502 (c) of the Bankruptcy Code.

"Disputed Claims Reserve"- Shall have the meaning set forth in Section 6.5 hereof.

"Distribution Record Date" – Shall mean the Business Day preceding the Effective Date.

"Effective Date" – Shall mean the date which is thirty (30) days after the Confirmation Date or if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Article X of the Amended Plan have not been satisfied or waived pursuant to Section 10.2 of the Amended Plan, then the first Business Day immediately following the day upon which all such

conditions have been satisfied or waived.

"Estate" shall mean the estate created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

"Final Order" – Shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and no appeal or petition for _certiorari_, review or rehearing is pending, or (ii) if an appeal, review, re−argument or _certiorari_ of the order has been sought, the order has been affirmed or the request for review, re−argument or _certiorari_ has been denied and the time to seek a further appeal, review, re−argument or _certiorari_ has expired, and as a result of which such order shall have become final and non−appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"General Unsecured Claim" – Shall mean a Claim that is not a Secured Claim or that is not entitled to priority of payment under Section 507 of the Bankruptcy Code.

"Holder" – Shall mean a Person or Entity who holds a Claim.

"Initial Distribution Date" – Shall mean the date at least thirty (30) days after the Effective Date, or the next succeeding Business Day if such thirtieth day is not a Business Day when funds are available for distribution.

"Internal Revenue Code" – Shall mean Title 26 of the United States Code, as amended from time to time.

"Lien" - Shall have the meaning set forth in Section 101 (37) of the Bankruptcy Code, except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

"Order of Relief" – Shall mean the Petition Date.

"Organizational Documents" shall mean the corporate bylaws, the certificate of incorporation, as amended, together with all other corporate documents of the Debtor necessary to effectuate the provisions of the Amended Plan.

"Person" – Shall mean any individual, corporation, partnership, joint venture, association, joint–stock company, trust, unincorporated association or organization, governmental agency, or political subdivision thereof.

"Petition Date" – Shall mean August 4, 2025, the date on which Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court, pursuant to the Bankruptcy Code.

"Amended Plan" – Shall mean this Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code, including, without limitation, the Amended Plan Documents, if any, and all exhibits, supplements, appendices, and schedules hereto and thereto, either in their present form or as the same may be altered, amended, or modified from time to time.

"Amended Plan Documents" shall mean and include such agreements, instruments and documents as may be required to effectuate the terms of this Amended Plan, including the Exhibits to the Amended Plan.

"Priority Claims" – Shall mean all Claims (or portions thereof), entitled to priority under Section 507 (a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

"Priority Tax Claims" – Shall mean any Claim of a governmental unit entitled to priority under Section 507 (a) (8) of the Bankruptcy Code.

"Professionals" – Shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503 (b) (4) of the Bankruptcy Code.

"Pro Rata" shall mean a proportionate share of the total distribution made at any particular time under this Amended Plan to the holders of Allowed Claims in a Class, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the total of all Allowed Claims in such Class.

"Schedules" – Shall mean the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

"Secured Claim" – Shall mean any Claim that is secured by Collateral, to the extent of the value of such Collateral, as determined in accordance with Section 506 (a) of the Bankruptcy Code, or, if such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

"UBS" – Shall mean UBS Trust Company of Puerto Rico.

## ARTICLE II
## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1    UNCLASSIFIED CLAIMS

In accordance with Section 1123 (a) (1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, secured and/or unsecured, are not classified for the purposes of voting on, or receiving distributions under the Amended Plan. All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

2.2    ADMINISTRATIVE EXPENSE CLAIMS

(a)    General

Except as otherwise agreed to by Debtor and the Holder of an Allowed Administrative Expense Claim, each such Holder shall be paid in full in the regular course of business or as authorized by the Court, on or before the Effective Date.

If Debtor disputes any portion of an Administrative Expense Claim, Debtor shall pay such Claim within thirty (30) days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim. Debtor will reserve the necessary funds to meet these payments.

(b)    U.S. Trustee's Fees

The United States Trustee's quarterly fees shall be paid in full without prior approval pursuant to 11 U.S.C. § 1930 on or before the Effective Date.

(c)    Professional Compensation and Expense Reimbursement Claims

The professionals retained in Debtor's Chapter 11 case have and will incur

fees and expenses from the date of their appointment through the Effective Date of the Amended Plan. It is impossible to predict the amount of professional administrative expense fees that will be incurred through the Effective Date of the Amended Plan. As of the filing of the Amended Plan, Debtor has respectively paid approximately $213,200 and $72,100, to its appointed Counsel and Financial Advisor. At present, Debtor estimates that additional Allowed Professionals Fee Claims will amount from $150,000.00 to $200,000.00 for unpaid services rendered and expenses incurred up to the Confirmation of the Amended Plan to Debtor's Court appointed professionals. All amounts paid to professionals through the Confirmation Date, including interim fees and expenses already paid, are subject to final Bankruptcy Court approval. Debtor reserves the right to contest the allowance of any professional fees.

## 2.3 PRIORITY TAX CLAIMS

Priority Tax Claims are Claims entitled to priority pursuant to Section 507 (a) (8) of the Bankruptcy Code. Such Priority Tax Claims consist of unpaid estimated income taxes for taxable years 2010 and 2011, as accrued prior to the Petition Date, proof of claim number 2 filed by CRIM, and proof of claim number 10 filed by the Municipality of Humacao, as adjusted. The estimated potential Priority Tax Claims are listed in Exhibit A attached hereto.

Holders of Allowed Priority Tax Claims, estimated at $1,691,754.37, shall be paid in 48 equal consecutive monthly installments commencing on the Effective Date and continuing on the last day of the following 47–months, equal to the amount of

such Allowed Priority Tax Claims, plus interest at 5.25% per annum, provided that the payments to the holders of Allowed Priority Tax Claims is effected in a manner not less favorable than the most favored non–priority unsecured claims provided for in the Amended Plan, other than those payments made to a Class of creditors consisting only of every unsecured claim reduced to an amount as reasonably necessary for administrative convenience.

Monthly payments for these claims are estimated at $39,098.38.

ARTICLE III

CLASSIFICATION OF CLAIMS

As of the date of the filing of Debtor's chapter 11 petition, Debtor had secured debts with UBS and CRIM. Debtor also has other priority and non–priority unsecured debts, as more particularly described below and in pages 6-8 of the Disclosure Statement. The Amended Plan classifies the various claims against Debtor.

A description of all classes of Claims, the estimated principal amount of each Class as of the Effective Date and its treatment are set forth below. The Classes of Claims set forth in the Amended Plan are as follows:

Class 1 – The Partially Secured Bond Claim, for $46,447,882.22, partially secured by substantially all of Debtor's assets, including Debtor's real estate, improvements thereto, certain machinery equipment and fixtures, accounts receivable and assignment of lease contracts related to Debtor's real estate and other assets.

Class 2 – The Secured Claim of Buena Coop's ~~(POC-13),~~ as an assignee of a capital lease from Commercial Equipment Finance, Inc. relative to the financing of golf cars for Debtor's operations.

Class 3 – The Claims of Commercial Equipment Finance, Inc. ("CEFI"), secured by

capital lease agreements for golf cars, tractors, four track vehicles and other equipment utilized for the maintenance of Debtor's golf courses and other areas. (POC's 11,12, **13,** 14,15,17,18,19,20 and 21).

Class 4 – Holders of Allowed General Unsecured Claims for $100,000 or less and those General Unsecured Creditors who voluntarily reduce their claims to $100,000.

Class 5 – Holders of Allowed General Unsecured Claims in excess of $100,000.

## ARTICLE IV
## TREATMENT OF CLASSES OF CLAIMS

Treatment of Claims and Interests

A.       Class 1 – The Partially Secured Bond Claim

(a)       Impairment and Voting

Class 1 is impaired under the Amended Plan. The bondholders will be entitled to vote to accept or reject the Amended Plan.

(b)       Distribution

Pursuant to the terms and conditions in that certain term sheet entered into by and between Debtor and the Bond Trustee, on June 30, 2026 (the "Term Sheet") (Exhibit B hereto), and subject to the conditions precedent set forth therein including, but not limited to, the execution by the Parties of the definitive agreements in accordance thereto to be submitted as Amended Plan Documents upon their execution and the acceptance by the bondholders of the treatment set forth in the Term Sheet and of the definitive documentation.  As set forth in the Term Sheet, upon execution of the definitive documentation and satisfaction of the conditions precedent set forth therein, the Bond Claim will be satisfied through the payments detailed in the Term Sheet in the amount of $14,000,000.00 and the other terms and conditions set forth therein. On the Effective Date of the Amended Plan, Debtor will pay $3,500,000.00 to the Bond Trustee. The balance of $10,500,000.00 will be paid in 180 consecutive monthly installments[1], including principal and interest, with any unpaid principal balance due on the 120th month after the Effective Date. The Term Sheet is incorporated herein and made to form part of the Amended Plan.

The bondholders, Bond Trustee and UBS will retain their perfected security interest over the collateral securing the Bond Claim, among other rights, detailed in the Term Sheet, which is considered an integral part of this Amended Plan.  The bondholders

---

[1] Monthly payments and interest rate are variable, pursuant to the terms and conditions of the Term Sheet.

shall be entitled to vote on their estimated deficiency claim under the Bond Claim, but shall not share in the distributions provided to other allowed unsecured creditors under the Amended Plan (and will only receive the rights, remedies, and distributions set forth in the Term Sheet and the definitive documentation).

Class 2 – The Secured Claim of Buena Coop

(a)     Impairment and Voting

Class **2** is unimpaired under the Amended Plan. Buena Coop is not entitled to vote to accept or reject the Amended Plan.

(b)     Distribution
Buena Coop's secured claim, as assignee of a capital lease from CEFI for the financing of golf cars for Debtor's operations, will continue to be paid in accordance with the terms of the capital lease agreement.

Class 3 – The Claims Commercial of CEFI

(a)     Impairment and Voting
Class 3 is unimpaired under the Amended Plan. CEFI is not entitled to vote to accept or reject the Amended Plan.

(b)     Distribution

CEFI's secured claims under capital lease agreements for the financing of Debtor's golf cars, tractors, four track vehicles and other equipment utilized for the maintenance of Debtor's golf courses and other areas, will continue to be paid in accordance with the terms of each capital lease agreement.

Class 4 – Holders of Allowed General Unsecured Claims for $100,000 or less and those General Unsecured Creditors who voluntarily reduce their claims to $100,000.

(a)     Impairment and Voting

Class 4 is impaired under the Amended Plan. Holders of Allowed General Unsecured Claims for $100,000 or less and those General Unsecured Creditors who voluntarily reduce their claims to $100,000.00 are impaired and entitled to vote accepting or rejecting the Amended Plan.

(b)     Distribution

Excepting the unsecured deficiency claim of UBS, which will not receive any dividends under this Class pursuant to the Settlement Agreement (Exhibit B), Holders of Allowed General Unsecured Claims for $100,000 or less and those General Unsecured Creditors who voluntarily reduce their claims to $100,000.00 will receive 10% of their claims, in full payment and release thereof, on the Effective Date.

Class 5 – Holders of Allowed General Unsecured Claims in excess of $100,000, including the claim of Palmas del Mar Homeowners Association, Inc. ("PHA") (POC-9) for $126,730.

(a)     Impairment and Voting

Class 5 is impaired under the Amended Plan. Holders of Allowed General Unsecured Claims in excess of $100,000.00 are entitled to vote.

(b)     Distribution

Excepting the unsecured claim of UBS, which will not receive any dividends under this Class pursuant to the Agreement, Holders of Allowed General Unsecured Claims in excess of $100,000 will receive 10% of their Allowed Claims in sixty (60) deferred equal consecutive monthly installments, without interest, commencing on the Effective Date and continuing on the 30th day of the following 59 months.

Exhibit C attached hereto consists of Debtor updated summary of claims for Classes 4 and 5.

ARTICLE V
MEANS FOR EXECUTION OF THE AMENDED PLAN

5.1 MEANS FOR EXECUTION

Except as otherwise agreed to by Debtor and the Holder of an Allowed Administrative Expense Claim, each such Holder shall be paid in full in the regular course of Debtor's business or as authorized by the Court, on or before the Effective Date of the Amended Plan. Allowed Priority Unsecured Tax Claims will be paid in forty eight (48) months as set forth above.

Class 1 will be paid as set forth in the Term Sheet included as Exhibit B hereto. Classes 2, 3, 4 and 5 excepting the Unsecured portion of the Bond Claim, which will be dealt with under the Term Sheet, will be paid with the available funds generated by Debtor's operations, the collection of Debtor's accounts receivable, and the redemption of securities, as detailed in Debtor's Updated Cash Flows Projections attached as Exhibit D hereto.

ARTICLE VI
IMPLEMENTATION OF THE AMENDED PLAN

6.1    METHOD OF DISTRIBUTIONS UNDER THE AMENDED PLAN

(a) In General. Subject to Bankruptcy Rule 9010, unless otherwise set forth herein or in the Exhibits hereto, all distributions under the Amended Plan to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Distribution Record Date, unless Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. Debtor shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b) Form of Distribution. Unless otherwise set forth herein or in the Exhibits hereto, any payment made pursuant to the Amended Plan shall be made by check, provided, however, that after the occurrence of the Effective Date, Debtor is not obligated to make any payment under the Amended Plan unless the payment exceeds ten dollars ($10); provided, further, that 100% of the distributions to which the holder of a Claim would be entitled under the Amended Plan if the payment to such holder was less than or equal to ten dollars ($10.00) shall be maintained in a reserve (the "Small Payment Reserve") for the benefit of such holder until an aggregate of at least ten dollars ($10.00) is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.

(c) Distribution to be on Business Day. Any payment or distribution required to be made under the Amended Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d) Fractional Dollars. Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less and rounding up in the case of more than $0.50).

(e) Distribution to Holders as of the Distribution Record Date. As of the close of business on the Distribution Record Date, the claims register shall be closed. Debtor and the Administrator shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date and shall instead be entitled to recognize and deal for all purposes under the Amended

Plan with only those holders of record as of the close of business on the Distribution Record Date, unless otherwise provided for by order of the Bankruptcy Court.

6.2 Objections to Disputed Claims.

Any objections to Claims against Debtor shall be prosecuted by Debtor, including any application to estimate or disallow Claims for voting purposes.

6.3 Deadlines for Objecting to Disputed Claims.

Except as otherwise provided by order of the Bankruptcy Court with respect to any Claim, Debtor may file an objection to such Claim or otherwise dispute such Claim within thirty (30) days before the first day fixed by the Bankruptcy Court for the hearing on the confirmation of the Amended Plan No payments will be made under the Amended Plan on account of Disputed Claims until their allowance by the Bankruptcy Court. Distributions on Disputed Claims will be held in reserve until the Disputed Claims are allowed at which time the reserves will be distributed, and the Claims will be treated according to the terms of the Amended Plan.

6.4 Estimation of Claims.

Debtor, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have authority to estimate such Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim. Debtor shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation on such Claim. If the Bankruptcy Court determines the maximum limitation of such Claim, such determination shall not preclude Debtor from pursuing any additional proceedings to

object to any ultimate payment of such Claim. If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Amended Plan.. All such proceedings are cumulative and not exclusive remedies.

6.5 Disputed Claims Reserve.

(a) Establishment. Debtor shall maintain a reserve (the "Disputed Claims Reserve") equal to 100% of the distributions to which holders of the respective Disputed Claims would be entitled under the Amended Plan if such Disputed Claims were Allowed Claims or for such lesser amount as required by a Final Order.

(b) Investment of Cash. Cash in the Disputed Claims Reserve may be invested by Debtor only in Cash Equivalents having maturities sufficient to enable Debtor to make all necessary payments to holders of Disputed Claims, in accordance with this Amended Plan, if, such Disputed Claims become Allowed Claims. Any interest, income, distributions, or accretions on account of such investment in Cash Equivalents shall be for Debtor's the benefit.

(c) Distribution Upon Allowance of Disputed Claims. The holder of a Disputed Claim that becomes an Allowed Claim after the Initial Distribution Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such distributions shall be made in accordance with the Amended Plan based upon the distributions that would have been made to such holders under the Amended Plan if the Disputed Claim had been an Allowed Claim on or prior to the Initial Distribution Date. No holder of a Disputed Claim shall have any claim against

the Disputed Claims Reserve, Debtor with respect to such Claims until such Disputed Claim shall become an Allowed Claim.

6.6 REVERSION OF UNCLAIMED CHECKS AND DISPUTED CLAIMS RESERVE.

The following amounts shall revert and be vested in Debtor, as to the claims to be paid under the Amended Plan, free and clear of any claim or interest of any holder of that Claim under the Amended Plan: (i) the amount of any checks issued for distributions under the Amended Plan that remain uncashed for a period of six months after the date of such distributions, and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to such Disputed Claim, over the amount of Cash actually distributed on account of such Disputed Claim.

6.7    GOOD STANDING

To the extent Debtor is not in compliance as of the Effective Date with any state or local law requirements necessary to remain a corporation in good standing and/or remain authorized as a corporation to conduct business in any jurisdiction, Debtor shall be deemed to follow any such laws if it complies therewith within six months after the Effective Date.

ARTICLE VII
VOTING ON THE AMENDED PLAN

7.1    VOTING OF CLAIMS

Each holder of an Allowed Claim in an impaired Class under the Amended Plan shall be entitled to vote separately to accept or reject the Amended Plan and indicate

such vote on a duly executed and delivered ballot as provided in an order entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Amended Plan.

## 7.2   NONCONSENSUAL CONFIRMATION

If any impaired Class entitled to vote shall not accept the Amended Plan by the requisite statutory majorities provided for in Sections 1126 (c) or 1126 (d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Amended Plan, Debtor reserves the right (i) to confirm the Amended Plan under Section 1129 (b) of the Bankruptcy Code, and (ii) to amend the Amended Plan in accordance with Section 12.3 hereof to the extent necessary to obtain the entry of a Confirmation Order.

## 7.3   GOOD FAITH SOLICITATION

While Debtor understands Bond Claims are not securities, to the extent they are, the Bond Trustee, UBS and  Debtor are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

### ARTICLE VIII
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## 8.1   REJECTION OF EXECUTORY CONTRACTS

With the exception of those executory contracts and leases which have not expired by their own terms or rejected pursuant to Section 365(a) of the Bankruptcy Code prior to the Confirmation Date, all other executory contracts and leases set forth in Exhibit I to the Disclosure Statement shall be deemed assumed on the Effective Date and the entry of the Confirmation Order by the Bankruptcy Court if

not previously so directed, shall constitute approval of such assumptions pursuant to Sections 365 (a) and 1123 (b) (2) of the Bankruptcy Code.

## 8.2    REJECTION DAMAGE CLAIMS

If the rejection of such an executory contract or unexpired lease results in a claim for damages by the other party or parties to such contract or lease, any claim for such damages, if not evidenced already by a filed proof of claim, shall be forever barred and shall not be enforceable against Debtor' Estate, or its properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor on or before thirty (30) days following the order granting such rejection. Debtor retains the right to object to any rejection damages claims filed in accordance with this Section.

## 8.3    POST–PETITION AGREEMENTS UNAFFECTED BY AMENDED PLAN

Except as otherwise expressly provided herein, nothing contained in the Amended Plan shall alter, amend, or supersede any agreements or contracts entered by Debtor after the Petition Date that were otherwise valid, effective, and enforceable against Debtor as of the Confirmation Date.

ARTICLE IX
RELEASE AND DISCHARGE OF CLAIMS

## 9.1    DISCHARGE

Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code, the Term Sheet (and the definitive documentation to be executed in connection thereto) or the Amended Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Amended Plan are in

full and final satisfaction, settlement, release of the Debtor as to any debt of Debtor that arose before the Effective Date, and any debt of Debtor of a kind specified in Section 502 (g), 502 (h), or 502 (i) of the Bankruptcy Code, and all Claims against Debtor of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim based on such debt or obligation is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such Claim has accepted the Amended Plan.

9.2    INJUNCTION RELATING TO THE AMENDED PLAN

As of the Effective Date, all Persons will be permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively, or otherwise against Debtor, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged pursuant to the Amended Plan, except to the extent expressly permitted under the Term Sheet (and the definitive documentation to be executed in connection thereto) or the Amended Plan.

9.3    CANCELLATION OF EXISTING INDEBTEDNESS AND LIENS

Except as may otherwise be provided for in the Term Sheet (and the definitive documentation to be executed in connection thereto) or the Amended Plan or in the Exhibits thereto, on the Effective Date, all credit agreements, promissory notes, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, shall be cancelled, discharged, and released without further act or action by any Person under any applicable

agreement, law, regulation, order or rule, and Debtor's obligations thereunder shall be deemed cancelled, discharged and released. To the extent deemed necessary or advisable by Debtor, any holder of a Claim shall promptly provide Debtor with an appropriate instrument of cancellation, discharge, or release in suitable form for recording wherever necessary to evidence such cancellation, discharge, or release, including the cancellation, discharge or release of any Lien securing the Claim.

## 9.4 SETOFFS

Except as otherwise provided herein or in the Term Sheet (and the definitive documentation to be executed in connection thereto), nothing contained in the Amended Plan shall constitute a waiver or release by Debtor of any rights of setoff the Estate may have against any Person.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

## 10.1 CONDITIONS PRECEDENT TO EFFECTIVENESS

The Amended Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or such conditions shall have been waived pursuant to Section 10.2 hereof:

(a) the Confirmation Order, in form and substance acceptable to Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order.

(b) each of the Amended Plan Documents, in form and substance acceptable to Debtor; (i) shall have been executed, delivered and, if necessary, properly recorded; (ii) shall have become effective; and (iii) shall have been filed with the Bankruptcy Court.

(c) all actions, other documents, and agreements necessary to implement

the Amended Plan and, if necessary, properly recorded, and shall have become effective; and

(d)    Debtor shall have sufficient Cash to meet all Cash funding obligations under the Amended Plan required to be made on the Effective Date, including without limitation, sufficient Cash to establish the Disputed Claims Reserve as to those claims to be paid by Debtor.

## 10.2   WAIVER OF CONDITIONS

Debtor may waive one or more of the above conditions precedents to the effectiveness of the Amended Plan, except that Debtor may not waive the condition that Debtor will have sufficient Cash to meet all of Debtor's payment and funding obligations under the Amended Plan on the Effective Date, and to establish the Disputed Claims Reserve corresponding to Debtor, as set forth in Section 6.5 (a) hereof.

## ARTICLE XI
## RETENTION OF JURISDICTION

## 11.1   RETENTION OF JURISDICTION

After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction on the following specified matters arising out of, and related to the Bankruptcy Case and the Amended Plan pursuant to Sections 105 (a) and 1142 of the Bankruptcy Code:

(a)    to hear and determine all objections to the allowance of any Claims or any controversies as to the classification of any Claim or estimate any Disputed Claim.

(b)    to hear and determine all applications by Professionals for compensation and reimbursement of expenses pursuant to Section 2.2 (c) hereof.

(c)    to hear and determine all pending applications for the rejection or assumption of executory contracts and unexpired leases and fix and allow any Claims resulting therefrom.

(d)    to determine all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date.

(e)    to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Amended Plan.

(f)    to enforce the provisions of the Amended Plan subject to the terms thereof.

(g)    to correct any defect, cure any omission, or reconcile any inconsistency in the Amended Plan, the Amended Plan Documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Amended Plan; and,

(h)    to determine such other matters as may be provided for in the Confirmation Order.

ARTICLE XII
MISCELLANEOUS

12.1 CONTINUATION OF INJUNCTIONS OR STAYS UNTIL EFFECTIVE DATE

All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

12.2  EXEMPTION FROM TRANSFER TAXES

In accordance with Section 1146 (c) of the Bankruptcy Code:

(a)    the issuance, transfer, or exchange of any security under the Amended Plan or the Term Sheet (and the definitive documentation to be executed in connection thereto) or the making or delivery of any instrument of transfer

pursuant to, in implementation of, or as contemplated by the Amended Plan or the Term Sheet (and the definitive documentation to be executed in connection thereto) or, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Amended Plan.

(b)     the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money, or other security interest under, in furtherance of, or in connection with the Amended Plan or the Term Sheet (and the definitive documentation to be executed in connection thereto); and,

(c)     the making, delivery or recording of any deed or other transfer instrument under, in furtherance of, or in connection with, the Amended Plan or the Exhibits hereto or the Term Sheet (and the definitive documentation to be executed in connection thereto), including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, or other similar tax or government assessment. Consistent with the foregoing, officials of a governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax, or similar tax.

## 12.3 AMENDMENT OR MODIFICATION OF THE AMENDED PLAN

Alterations, amendments, or modifications of the Amended Plan may be proposed in writing by Debtor at any time prior to the Confirmation Date, provided that the Amended Plan, as altered, amended, or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and Debtor shall have complied with Section 1125 of the Bankruptcy Code. The Amended Plan may be altered, amended, or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Amended Plan, as altered, amended, or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy

Code and the Bankruptcy Court, after notice and a hearing, confirms the Amended Plan, as altered, amended, or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Amended Plan shall be deemed to have accepted the Amended Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such holder. Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Amended Plan and any exhibit thereto or in any Amended Plan Document.

## 12.4   SEVERABILITY

If, prior to the Confirmation Date, any term or provision of the Amended Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon Debtor's request, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Amended Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute Amended Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

## 12.5   REVOCATION OR WITHDRAWAL OF THE AMENDED PLAN

Debtor reserves the right to revoke or withdraw the Amended Plan prior to the Confirmation Date. If Debtor revokes or withdraws the Amended Plan prior to the Confirmation Date, then the Amended Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against Debtor or any other Person or to prejudice in any manner Debtor's rights or those of any Person in any further proceedings involving Debtor.

## 12.6  BINDING EFFECT

The rights, duties and obligations of any Person named or referred to in this Amended Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

## 12.7  NOTICES

All notices, requests and demands to or upon Debtor shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

Palmas Athletic Club, Corp.
1 Country Club Drive
Humacao, P.R. 00791


With a copy to:

Charles A. Cuprill, PSC, Law Offices
356 Fortaleza Street, Second Floor
San Juan, PR 00901
Tel.: (787) 977–0515
Fax: (787) 977–0518
E–mail: ccuprill@cuprill.com

## 12.8   GOVERNING LAW

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Amended Plan or the Amended Plan Documents provide otherwise, the rights and obligations arising under this Amended Plan shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Puerto Rico.

## 12.9 WITHHOLDING AND REPORTING REQUIREMENTS

In connection with the consummation of the Amended Plan, Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

## 12.10   AMENDED PLAN DOCUMENTS

Upon filing with the Bankruptcy Court, the Amended Plan Documents may be inspected by creditors and parties in interest at the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims may obtain a copy of the Amended Plan Documents upon written request to Debtor in accordance with Section 12.7 hereof. Amended Plan are incorporated into and made a part of the Amended Plan, as if fully set forth herein.

## 12.11   POST–CONFIRMATION FEES, FINAL DECREE

Debtor shall be responsible for the payment of any post–confirmation fees due pursuant to 28 U.S.C. § 1930 (a) (6) and the filing of post–confirmation reports until a final decree is entered or as otherwise provided by the Bankruptcy Court. A final decree shall be entered as soon as practicable after initial distributions have

commenced under the Amended Plan.

## 12.12  HEADINGS

Headings used in the Amended Plan are for convenience and reference only and shall not constitute a part of the Amended Plan for any other purpose.

## 12.13  FILING OF ADDITIONAL DOCUMENTS

On or before substantial consummation of the Amended Plan, Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.  Prior to the confirmation hearing of the Amended Plan, Debtor shall file with the Bankruptcy Court the definitive agreements contemplated in the Term Sheet, which shall be forwarded by the Bond Trustee to the Bond Holders for voting and approval of the proposed treatment of the Bond Claims prior to the confirmation hearing.

## 12.14  INCONSISTENCY

In the event of any inconsistency between the Amended Plan and the Disclosure Statement, the Amended Plan Documents or any other instrument or document created or executed pursuant to the Amended Plan, the terms of the Amended Plan shall govern.

*Signature Page*
*Follows*

Dated: July 21, 2026.

Palmas Athletic Club, Inc.

By:

*José R. Vizcarrondo Carrión*

José R. Vizcarrondo Carrión
President

## LIST OF EXHIBITS

Exhibit A – Updated Summary of Priority Tax Claims

Exhibit B – Term Sheet Agreement with UBS Trust Company of Puerto Rico.

Exhibit C – Updated Summary of Claims and Amended Plan Payments

Exhibit D – Updated Projected Cash Flows Projections