June 30, 2026                                    Exhibit B

Via Electronic Mail

Palmas Athletic Club, Corp.
c/o José R. Vizcarrondo, President of the Board of Directors
c/o Carlos Sosa Padró, Secretary of the Board of Directors
c/o Hector Rosario, Executive Director
Country Club Drive # 1
Palmas Del Mar
Humacao, PR 00791

**Re: Summary of Terms and Conditions for Consensual Plan of Reorganization of Palmas Athletic Club, Corp.**

Dear Messrs. Vizcarrondo, Sosa, and Rosario:

This Summary of Terms and Conditions (this "Term Sheet") sets forth the binding indicative terms and conditions upon which UBS Trust Company of Puerto Rico, as bond trustee (the "Bond Trustee") under the trust agreement for the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority Tourism Revenue Bonds, 2000 Series A (Palmas Del Mar Country Club Project) (the "Trust Agreement"), and Palmas Athletic Club, Corp. ("PAC" or the "Debtor") will enter into definitive documentation providing for the consensual treatment of the bondholders' claims against PAC under a chapter 11 plan of reorganization (the "Transaction") to be filed in the United States Bankruptcy Court for the District of Puerto Rico (the "Bankruptcy Court") in Case No. 25-03489-ESL (the "Bankruptcy Case"). This Term Sheet is intended to be used as a basis for continued discussions between the parties and for the drafting, negotiation and execution of the definitive documentation, is subject to Federal Rule of Evidence 408, and constitutes a binding agreement, subject to the term and conditions set forth herein, to enter into the definitive documentation among the parties and to be approved by the Bankruptcy Court.

| | |
|---|---|
| **Parties:** | Palmas Athletic Club, Corp., a not-for-profit organization and debtor in possession in the Bankruptcy Case pending before the Bankruptcy Court. |
| | UBS Trust Company of Puerto Rico, solely in its capacity as Bond Trustee, acting for the benefit of the bondholders. |
| **Bond Claims:** | The Bond Trustee, on behalf of the bondholders, has allowed claims against PAC in the approximate amount of $46.4 million, as reflected in Proof of Claim No. 5-1 (the "Bond Claims"). See Cash Collateral Stipulation, defined below. |

1

**Governing Documents:** On August 18, 2025, the Bond Trustee and PAC filed in the Bankruptcy Case an *Emergency Joint Motion and Stipulation for the Use of Cash Collateral and Adequate Protection* (the "*Cash Collateral Stipulation*") (Docket No. 20). As set forth in the Cash Collateral Stipulation, the Bond Trustee and PAC are parties to the Financing Agreements (as defined therein) and the other Loan Documents (as defined therein). Through the Financing Agreements and Loan Documents, the bondholders hold a perfected, first priority security interest over the Collateral (as defined in the Cash Collateral Stipulation).

**Structure of Transaction:** The Transaction is intended to be structured as an amendment to the Financing Agreements and restructuring of the obligations set forth therein, with all other terms and conditions of the Financing Agreements and the Loan Documents continuing in full force and effect and ratified through the definitive documentation Additional legal analysis will be performed to select the best manner to document the Transaction for the benefit of the bondholders, including tax implications, the negotiability and transferability of the bonds, the rights, title and interests in the Deferred Note (as defined below) and the ability to replace, substitute or remove the Bond Trustee as set forth below.

**Purpose:** The purpose of the Transaction contemplated by this Term Sheet is to provide for a consensual resolution and treatment of the Bond Claims under a consensual plan of reorganization (the "Plan") and to resolve the pending contested matters between the parties. The Plan and all related definitive documentation shall be in form and substance acceptable to PAC, the Bond Trustee, and such other parties whose approval is required under applicable bankruptcy law and the Trust Agreement.

**Plan Treatment of Bond Claims:** On the effective date of the Plan incorporating the terms of this settlement (the "Effective Date"), the bondholders shall receive a total consideration as to the secured portion of the Bond Claims in the aggregate principal amount of $14,000,000.00, consisting of (i) an initial cash payment of $3,500,000.00 and (ii) a deferred secured promissory note in the principal amount of $10,500,000.00 in full payment and satisfaction of the outstanding bonds. Except for the potential earn-out payments described below, and subject to no Event of Default occurring, the bondholders shall receive no other distribution on account of the unsecured deficiency portion of the Bond Claims but shall be entitled to vote in favor of and support the

2

Plan. The definitive documentation will set forth the detail of the cash reserve to be retained by PAC and its proposed use.

**Initial Cash Payment:** On or before the Effective Date, PAC shall pay to the Bond Trustee, for the benefit of the bondholders, a lump-sum cash payment from PAC's existing cash and investments in the amount of $3,500,000.00 (the "Initial Payment"). The Initial Payment shall be made by [wire transfer] in immediately available funds to an account designated by the Bond Trustee.

**Deferred Note:** PAC shall execute and deliver to the Bond Trustee, for the benefit of the bondholders, a secured promissory note in the principal amount of $10,500,000.00 (the "Deferred Note"). The Deferred Note shall be amortized based on a twenty-year (20) amortization schedule. Monthly payments of principal and interest shall be due on or before the first day of each month, commencing on the first day of the month following the Effective Date. All outstanding principal and accrued interest under the Deferred Note shall be due and payable in full on the tenth anniversary of the Effective Date, unless earlier paid in full in accordance with the terms of the definitive documentation (the "Maturity Date"). The Deferred Note shall bear interest at a Puerto Rico income tax exempt fixed rate of: 8% per annum during the first year; 8.25% per annum during the second; 8.75% per annum during the third and fourth year; 9.25% per annum during the fifth and sixth year; and 10.25% per annum during the seventh year and until the Maturity Date. Upon the occurrence and continuance of an Event of Default and after the expiration of any applicable cure period, the obligations under the Deferred Note shall bear interest at a default rate equal to 15% per annum (the "Default Rate").

**Collateral for Deferred Note:** The Deferred Note shall be secured by a first-priority, senior secured perfected lien and security interest over the Collateral, and to the same extent, as the existing security interests securing the Bond Claims under the Loan Documents. The definitive documentation shall include such mortgages, security agreements, financing statements, account control agreements, assignments, and other collateral documentation as may be reasonably required to evidence, continue, perfect, and protect the bondholders' liens and security interests over the Collateral.

**Optional Prepayment:** PAC may prepay the Deferred Note in whole or in part prior to the Maturity Date without prepayment penalty, subject to the notice, application, and other procedures set forth in the definitive documentation.

3

**Excess Cash Flow:** The definitive documentation shall include an excess cash flow provision (the "ECF Provision"). Under the ECF Provision, 70% of PAC's annual excess cash flow, based on audited financial statements and any proceeds from insurance recoveries not necessary to be reinvested into the property due to PAC's efficiency in effecting the repairs thereto with approval of the Bond Trustee, shall be applied as a mandatory prepayment of principal under the Deferred Note. Such prepayment shall be made within [30] days following delivery of the audited financial statements for each calendar year. For purposes of the ECF Provision, "Excess Cash Flow" shall mean EBITDA less payments required under the Plan, income tax payments, approved capital expenditures, debt service, and the amount required to maintain a cash balance in an amount to be agreed to as part of the definitive documentation. Funds from special assessments to members for specific projects, including construction of facilities, and the  expenses related thereto, shall be excluded from the calculation of Excess Cash Flow.

**Capital Expenditures:** The definitive documentation shall include a definition of "Capital Expenditures" that clearly distinguishes capital expenditures from operational expenses, including with respect to any expenditures funded through assessments or similar mechanisms (the parties acknowledging that such definition is intended to prevent the characterization of operational expenses as capital expenditures). The yearly Capital Expenditures that will not require Bond Trustee approval will be included in a detailed schedule to the definitive documentation describing such expenditures by line item.

Any other Capital Expenditure shall require Bond Trustee approval.

The definitive documentation will include specific thresholds, amounts, mechanics and applicable Capital Expenditures covenants.

**Earn-Out for Unsecured Deficiency Claim:** The parties shall establish a mandatory earn-out mechanism, which may be documented through an earn-out trust agreement or other definitive arrangement acceptable to the parties, to provide the bondholders with potential additional payments on account of the unsecured deficiency portion of the Bond Claims. The mandatory earn-out provisions shall run for two (2) years following payment in full of the Deferred Note, whether at the Maturity Date or earlier. The earn-out shall provide for payment to the Bond Trustee, for the benefit of the bondholders, of: (a) 25% of the gross sale proceeds of PAC's assets in excess of $20,000,000.00 if the PAC Facilities (as that term is defined in the Cash Collateral Stipulation) are sold or transferred; (b) 25% of the gross sale proceeds if only a portion and not the totality of the PAC Facilities are sold or transferred; and (c) 25% of gross revenues generated by monthly membership dues

4

exceeding $750 per member per month. The earn-out shall be in addition to, and not in substitution of , PAC's obligations under the Initial Payment, Deferred Note, Consent Judgment, ECF Provision, and other definitive documentation. PAC shall provide the Bond Trustee with quarterly reports detailing membership dues and any proposed or pending asset sales.

**Consent Judgment:** As additional security for PAC's obligations under the settlement, PAC shall execute and deliver a consent judgment in favor of the Bond Trustee, for the benefit of the bondholders, in the full amount of the Bond Claims (the "Consent Judgment"). The Consent Judgment shall be filed and shall become immediately enforceable upon the occurrence and continuance of an event of default under the Deferred Note, the Plan, or any other definitive agreement entered into pursuant to the settlement, after expiration of any applicable cure period.

**Prospective Waiver of the Automatic Stay:** Subject to the approval of the Bankruptcy Court, PAC shall consent, as part of the confirmed Plan and the order confirming the Plan, to the Bond Trustee, on behalf of the bondholders, being granted prospective relief from the automatic stay in any future bankruptcy filing by PAC or any successor entity. Such prospective relief shall apply to the Bond Trustee's Collateral and enforcement of the Consent Judgment and remedies available under the Loan Documents, the definitive documentation and applicable law, and shall permit the Bond Trustee to exercise its rights and remedies against the Collateral.

**Governance and Oversight:** On the Effective Date, PAC shall appoint one representative designated by the Bond Trustee to serve as a non-voting member of PAC's Board of Directors' financial advisory committee or similar committee to be created , until the later of (i) payment in full of the Deferred Note, or (ii) expiration of the earn-out period. The Bond Trustee's non-voting representative shall receive (a) reasonable advance notice of all committee meetings, (b) all financial information, committee packages, and other materials provided to other committee members at the same time as such materials are provided thereto , and (c) such attendance, consultation, inspection, and reporting rights as all other members of PAC's Board of Directors' financial advisory or similar committee.

**Cure Periods:** For any event of default, including a payment default, PAC shall have a 10 calendar days' notice and cure period, after which the Default Rate shall apply to the Deferred Note.  Should a default not be cured within such cure period, the Bond Trustee shall be entitled

to exercise, without any further notice or demand, all rights and remedies as set forth in the "Events of Default" section set forth below.

**Conditions Precedent:** The effectiveness of the Transaction contemplated by this Term Sheet shall be subject to satisfaction or waiver of conditions precedent customary for a transaction of this type. Such conditions shall include, without limitation, the negotiation, execution, and delivery of definitive documentation acceptable to PAC and the Bond Trustee, including the Plan, Deferred Note, amendment to Financing Agreement and other loan and collateral documents, Consent Judgment, earn-out documentation, and all other ancillary documents reasonably required. Such conditions shall also include approval by the bondholders required under the Trust Agreement and applicable bankruptcy law, approval by PAC's board of directors and membership to the extent required by PAC's bylaws, and entry of a final order of the Bankruptcy Court confirming the Plan and approving the settlement. The Bond Trustee will also include as part of the Transaction an amended structure to replace or substitute the existing bond trustee by another bond trustee, a servicing agent, or any other new procedure to manage the restructured obligations on behalf of the bondholders, or remove the Bond Trustee altogether, if legally permitted.

**Affirmative Covenants:** The definitive documentation shall include affirmative covenants customary for a senior secured restructuring transaction, including, without limitation, those existing under the Loan Documents, maintenance of PAC's existence, compliance with law, financial reporting covenants, financial covenants (including without limitation minimum liquidity and debt service coverage ratio requirements), maintenance of required licenses and permits, maintenance of insurance (naming the Bond Trustee as additional insured and loss payee, as applicable), payment of any and all required taxes, preservation of Collateral, delivery of financial statements, and delivery of information necessary to calculate ECF Provision and earn-out payments. PAC shall provide the Bond Trustee with audited annual financial statements and such interim financial statements, budgets, covenant compliance certificates, ECF Provision calculations, earn-out calculations, and operating reports as required under the definitive documentation.

**Negative Covenants:** The definitive documentation shall include negative covenants customary for a senior secured restructuring transaction, including, without limitation, those existing under the Loan Documents, restrictions on additional indebtedness, liens, asset sales, mergers, changes in control, affiliate transactions, material changes in

6

business, and transactions outside the ordinary course of business or without the consent of the Bond Trustee.

**Mandatory Prepayments:** In addition to the ECF Provision mandatory prepayment and earn-outs described above, the Deferred Note shall be subject to mandatory prepayment, as set forth in the Loan Documents, including from proceeds of real estate collateral dispositions, condemnation awards, and other extraordinary receipts to the extent provided in the definitive documentation.

**Events of Default:** Events of default shall be customary for transactions of this type and shall include those existing under the Loan Documents and, without limitation, failure to pay principal, interest, ECF Provision prepayments, earn-out payments, or other amounts when due; breach of covenants; inaccuracy of representations and warranties; invalidity or impairment of Collateral; failure to maintain insurance; unauthorized disposition of Collateral; entry of material judgments; insolvency or commencement of any bankruptcy or insolvency proceeding; failure to comply with Plan obligations; and failure to comply with the Consent Judgment, or other definitive documentation. Upon the occurrence and continuance of an event of default after expiration of any applicable cure period, the Bond Trustee may exercise all rights and remedies available under the Deferred Note, definitive documentation, Consent Judgment, Plan, confirmation order, and applicable law, including acceleration of all outstanding amounts.

**Documentation:** All documentation shall be subject to negotiation, execution, and delivery of definitive agreements in form and substance acceptable to PAC and the Bond Trustee and the bondholders. Such documentation shall include, without limitation, the Plan, Deferred Note, loan and collateral documents, Consent Judgment, earn-out trust or agreement, board observer or advisory committee rights agreement, confirmation order provisions, and all related ancillary documents.

**Transaction Costs:** The Parties shall structure this transaction pursuant to the Plan and thus subject to section 1146 of the Bankruptcy Code and shall request the corresponding orders and writ to exempt the Transaction from transfer and stamp taxes as provided therein. Each Party shall bear its own attorney's fees and costs related to the Transaction.

**No Novation / Reservation Of Rights:** Except to the extent expressly provided in the Plan, the confirmation order, and definitive documentation upon the Effective Date, nothing in this Term Sheet shall constitute a novation, satisfaction, release, waiver, or discharge of the Bond Claims, Loan Documents,

7

the Bond Trustee's liens, or any rights, claims, defenses, or remedies of any party. Each party expressly reserves all rights, claims, defenses, and remedies unless and until definitive documentation is executed and becomes effective in accordance with its terms and the Plan.

**Confidentiality:** This Term Sheet and all related negotiations are confidential and are protected by Federal Rule of Evidence 408. This Term Sheet may not be disclosed to any third party (excluding, solely, the bondholders, PAC's board of directors and its members and their respective professionals ) without the prior written consent of PAC and the Bond Trustee, except as required by applicable law or the Bankruptcy Court.

By signing below, the parties confirm that the Term Sheet accurately reflects the parties' understanding of the Transaction and that the parties shall proceed to negotiate definitive documentation consistent with this Term Sheet, subject in all respects to required approvals and entry of an order of the Bankruptcy Court confirming the Plan and approving the same.

**PALMAS ATHLETIC CLUB, CORP.**

By:_____

Name: José R. Vizcarrondo Carrión

Title: President

**UBS TRUST COMPANY OF PUERTO RICO,
as Bond Trustee**

By: _____
Name: Javier González Matos
Title: Bond Trustee

8